IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SABRINA STEARNS, on behalf of RS, | ) | CASE NO. 1:09 CV 1390 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is the appeal under 42 U.S.C. § 1383c(a)(3) of Sabrina Stearns, on behalf of her minor daughter RS,[2] from the Commissioner's denial of her application for children's supplemental security income benefits.[3] The Administrative Law Judge (ALJ), whose decision to deny the application became the final decision of the Commissioner, found that RS had severe impairments consisting of Rolandic epilepsy, hyperactivity disorder, and oppositional defiant disorder.[4] The ALJ decided that these impairments – individually or

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 8.

[2] Under Local Rule 8.1(s)(2), minor children are to be identified only by initials.

[3] ECF # 1.

[4] Transcript ("Tr.") at 18.

collectively – did not meet or medically equal various listings of Appendix 1 of the regulations.[5] He, therefore, determined that RS was not under a disability.[6]

In reaching that conclusion, the parties agree,[7] the ALJ did not specifically discuss if RS met or equaled the listing for childhood mental retardation set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05(D), even though the record contains a verbal IQ score for RS below 70. For the reasons that follow, I find that such discussion was required, and so the matter must be remanded.

## Facts

The relevant facts are straightforward. The record is clear that RS has not been diagnosed with mental retardation, nor did she seek benefits on the basis of being mentally retarded. The record also shows that Zev Goldberg, Ph.D., performed a psychological evaluation of RS that included intelligence testing.[8] That testing established that RS had a Full Scale IQ score of 86 but a Verbal Comprehension Index Score (VCI) of 67.[9] Noting the discrepancy between the verbal score of 67 and the full score of 86 (as well as with a perceptual IQ score of 94), Dr. Goldberg suggested that the verbal score might

---

[5] *Id*.

[6] *Id*. at 29.

[7] *See*, ECF # 23 (Stearns brief) at 1; ECF # 24 (Commissioner's brief) at 1.

[8] Tr. at 202.

[9] *Id.* at 191-92.

"underestimate her true level of ability" and reflect a lack of cooperation in the testing.[10] With that reasoning, he characterized the verbal score as "inconclusive."[11]

Against that background, the ALJ proceeded to render a decision that did not present any analysis of whether RS's verbal IQ score of 67 met the listing for mental retardation contained at listing § 112.05(D), which provides in relevant part:

> § 112.05 Mental Retardation: Characterized by showing significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E or F are satisfied.
>
> ....
>
> D. A valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

In fact, despite not discussing mental retardation, the ALJ, as noted, specifically considered and discussed whether RS had impairments meeting or medically equaling the listings for epilepsy, personality disorders, and ADHD.[12]

As to the IQ evidence, the ALJ noted that RS was given the IQ testing for the purpose of evaluating her for ADHD and learning disabilities.[13] The ALJ went on to take note only of RS's full scale IQ score of 86, but not any of the component scores, and to further observe,

---

[10] *Id.* at 202.

[11] *Id.*

[12] *Id.* at 18.

[13] *Id.* at 21.

without additional explanation, that "Dr. Goldberg questioned the validity of the [IQ] results due to [RS's] lack of effort and cooperation in the testing."[14]

The ALJ then concluded with an analysis of whether RS had shown limitations in the six domains of functioning, finding no limitations in three domains and less than marked limitations in three others.[15] The ALJ determined that RS was not disabled.[16]

## Analysis

As stated earlier, § 112.05 sets forth the listing for mental retardation applicable to children. Mental retardation itself is described in the section as be "[c]haracterized by significantly subaverage intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in ... D ... are satisfied."[17] Subsection D then further states that the listing is met according to that subsection with "[a] valid verbal, performance or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."

---

[14] *Id.*

[15] *Id.* at 24-29.

[16] *Id.* at 29.

[17] 20 C.F.R., Pt. 404, Subpt. P., App.1 § 12.05.

In *Isham v. Astrue*[18] – a case which the parties here were given an opportunity to brief as to its applicability in this matter[19] – the court found that where the record contains an IQ score under 70, an ALJ's failure to "follow the procedural requirement of explaining in the narrative decision why a claimant with an IQ score under 70 does not have an impairment or combination of impairments that meet or equal the definition of mental retardation under § 12.05(C)[20] is grounds for remand."[21]

As *Isham* plainly notes, the requirement that the ALJ provide reasons as to why a claimant with an IQ score under 70 in the record does not meet or equal the listing for mental retardation is a mandatory procedural requirement.[22] Moreover, in cases where there is evidence in the record of one criteria for establishing disability, the lack of articulated reasons by the ALJ as to why there is no disability under the listing denotes a lack of substantial evidence in support of the decision, even where the conclusion may otherwise be justified by later recourse to the entire record.[23]

---

[18] *Isham v. Astrue*, No. 3:08-cv-423, 2010 WL 1957362 (E.D. Tenn. Jan. 13, 2010).

[19] *See*, ECF # 22 (Court Order); # 23 (Stearns brief); # 24 (Commissioner's brief).

[20] As the Commissioner observes, while *Isham* addressed the mental retardation listing at § 12.05(C) applicable to an adult claimant, the listing at § 112.05(D) applicable to a child is in relevant part identical. *See*, ECF # 24 at 1 n.1.

[21] *Isham*, 2010 WL 1957362, at *6 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

[22] *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009)).

[23] *Id.*

This holding in *Isham* is consonant with the Sixth Circuit teaching in *Abbott v. Sullivan*, which states that the listing for mental retardation "differs from nearly all others in that it does not require satisfaction of the B criteria [of functional limitations] in all cases."[24] Specifically, as noted above, disability is established by an IQ score between 60 and 70 plus a physical or mental impairment imposing an additional and significant limitation of function; a requirement that does not involve consideration of the various domains of function set forth in the specified B criteria.

In this case, the Commissioner has not asserted that the ALJ has undertaken the analysis for mental retardation set forth above.  Rather, the Commissioner argues that no such analysis as set out in *Isham* was required because no basis for it was established.

In that regard, the Commissioner's contention that *Isham* is inapposite is unpersuasive. Specifically, the argument that an on-the-record IQ score below 70 can be safely ignored without comment by the ALJ because that score was characterized in the record as "suspect," or because of reasons proffered in the record that might otherwise minimize its importance, does not comport with the rule that the ALJ – not the Commissioner on judicial review and certainly not this Court – must take notice of a score below the minimum level and then articulate reasons why such a score does or does not give rise to a finding of disability under the listing.

---

[24] *Abbott*, 905 F.2d at 924 (citing § 12.05).

I am aware that in this case the Commissioner's argument that RS's single verbal IQ score of 67 is not truly indicative of her capacity, and thus RS does not meet or equal the listing for mental retardation, could well form the basis for a decision by the ALJ on remand to reject RS's application. That said, however, the key, as stated above, is that it must be the ALJ, not the Commissioner and not this Court, who expressly articulates findings mandated by law concerning a disability given the existence in the record of an IQ score below 70.

Moreover, I am also aware that here, unlike *Isham*, RS had not argued in her claim she was mentally retarded, and so did not alert the ALJ as to the need for any discussion concerning whether she met the listing in this respect. Nevertheless, I interpret *Isham* – and by extension *Abbott* – as setting out the bright-line rule that, where an IQ score below 70 exists in the record, the ALJ must provide a specific analysis under the mental retardation listing as to whether the claimant is mentally retarded or not, regardless of how the claim was argued, with failure to do so requiring remand.

## Conclusion

For the above reasons, the decision of the Commissioner denying the application for children's supplemental security income is reversed, and the case is remanded for further proceedings consistent with this decision.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[25] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:  March 22, 2011                                         s/ William H. Baughman, Jr.
                                                               United States Magistrate Judge

---

[25] 28 U.S.C. § 2412(d)(1)(A).